UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

| Case No. | CV 14–368 DSF (MANx) | Date | 4/1/15 |
|---|---|---|---|
| Title | Robin Anderson v. CRST International, Inc., et al. | | |

| Present: The Honorable | DALE S. FISCHER, United States District Judge | |
|---|---|---|
| Debra Plato | | Not Present |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (In Chambers) Order GRANTING Defendants' Motions for Summary Judgment (Docket Nos. 36, 45)

Plaintiff Robin Anderson brings state and federal harassment, discrimination, retaliation, and failure to prevent claims against Defendants CRST International, Inc., CRST Van Expedited, Inc. (CRST),[1] and Eric Vegtel.  CRST and Vegtel move for summary judgment in separately filed motions.

## I.   BACKGROUND

CRST is a for-hire motor carrier that provides nationwide trucking services. (CRST's SOUF ¶ 1.)[2]  CRST is headquartered in Cedar Rapids, Iowa, where it directs all

---

[1] Consistent with the parties' briefing, see CRST's Mot. at 1 n.1, the Court does not distinguish between CRST International, Inc. and CRST Van Expedited, Inc. for purposes of this Order.

[2] Anderson characterizes numerous facts as "disputed" but challenges only the relevance of the asserted fact.  (See, e.g., Anderson's SGI-CRST ¶¶ 3-4, 20-21, 93-94.)  In other instances, Anderson supports her "disputed" characterization by raising tangential arguments or citing irrelevant portions of the record.  (See, e.g., id. ¶¶ 73-74, 85-86.)  These characterizations and corresponding arguments, which appear to constitute little more than an attempt to avoid admitting undisputed facts, are insufficient to create a genuine dispute of fact and violate the Court's Initial Standing Order at ¶ 8(c)(2).  Because Anderson's improper arguments are insufficient to create genuine disputes of fact, the Court need not rule on Defendants' related evidentiary objections.  (See CRST's Objection to Anderson's SGI ¶¶ 29-34, 85, 93-94, 96-98,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

of its transportation operations; develops and implements company policy and protocol; and maintains personnel files, payroll data, and other employment and operational information. (Id. ¶ 3.)[3] CRST's human resources (HR), safety, and payroll departments are located at the company's Cedar Rapids headquarters. (Id. ¶ 4.)[4]

CRST hired Anderson as an experienced over-the-road commercial truck driver on December 14, 2012. (Id. ¶ 35.) After Anderson completed her orientation, Alvin Hoggard, the head of CRST's Fontana, CA facility, assigned her to drive with Vegtel on an "over-the-road" trip. (Declaration of Robin Anderson (Anderson Decl.) ¶ 3.) When initially paired with Vegtel, Anderson was told – apparently by a third party – that she would be traveling in Vegtel's truck and that Vegtel was the "Lead Driver." (Id.)[5] Anderson understood this to mean that Vegtel was her supervisor. (Id.)

Joseph Stearns, a fleet manager who worked out of CRST's Cedar Rapids headquarters, supervised Anderson and Vegtel. (CRST's SOUF ¶ 40.)[6] Stearns was

---

104; Vegtel's Objections to Anderson's SGI ¶¶ 2, 6, 8-12, 16, 18-19, 21-25.)
  For purposes of adjudicating Defendants' summary judgment motions, a fact is disputed only to the extent a party disputes the truth of the fact and offers competent evidence to support the dispute. See Fed. R. Civ. P. 56(a), (c). Where a genuine dispute of fact exists, the Court construes the evidence in the light most favorable to Anderson, the non-movant.

[3] This fact is undisputed for purposes of Defendants' motions. See supra n. 2.

[4] This fact is undisputed for purposes of Defendants' motions. See supra n. 2.

[5] Anderson claims that she "was told that the truck [she and Vegtel] would be traveling in was Vegtel's and that he – not [Anderson] – was the Lead Driver of this truck." (Anderson Decl. ¶ 3.) Anderson seeks to use this out-of-court statement from a third party to prove that Vegtel was the Lead Driver; therefore, it is hearsay. See Fed. R. Evid. 801, 802. Defendants' related evidentiary objections, as they concern statements from third parties, are SUSTAINED. (See CRST's Objection to Anderson's SGI ¶¶ 10-16, 20-21; Vegtel's Objection to Anderson's SGI ¶ 2.) Vegtel's out-of-court statements, which come from a party opponent, are admissible. See Fed. R. Evid. 801(d)(2). Anderson cannot rely on hearsay to create a genuine dispute of fact. See Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.") To the extent statements concerning Vegtel's employment status are admissible, they are insufficient to create a triable issue of fact because, as explained below, Vegtel's status as Lead Driver would not make him Anderson's supervisor for purposes of Title VII or FEHA liability.

[6] This fact is undisputed for purposes of Defendants' motions. See supra n. 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

responsible for, inter alia, dispatching loads to Anderson and Vegtel. (Id. ¶ 41.)[7]

Beginning immediately after Anderson's December 14 hire, she and Vegtel drove together for about three weeks. (Vegtel's SOUF ¶¶ 1-2.) Anderson and Vegtel drove in alternate eleven hour shifts, relieving each other to sleep in the sleeper berth of the truck. (Id. ¶ 3.) The vast majority of the time Vegtel and Anderson were in the truck together, one was driving while the other was in the sleeper berth behind a curtain. (Id.)

Anderson claims that Vegtel began to sexually harass her shortly after they began working together. During their first trip, which lasted from December 14 through December 17, Vegtel allegedly informed Anderson that he had experienced a painful erection the previous night, and that notwithstanding Anderson's "plead[ing]" that he stop talking about that subject, he continued to tell her that his erection was "so strong that he 'didn't know what to do' and it hurt so bad that he felt like he had overdosed on Viagra." (Anderson Decl. ¶ 5.)

Vegtel also told Anderson that he was formerly in the "porn industry" and started talking about women with large breasts. (Vegtel's SOUF ¶¶ 9-10[8]; Anderson Decl. ¶ 6.) During this conversation, Vegtel said, "[o]f course, if the woman puts the breasts out there, I'm going to be looking at them, and especially if she puts them in my face." (Declaration of D. Chad Anderton (Anderton Decl.), Ex. A at 141:17-19.) Vegtel further informed Anderson that he had "gotten into trouble" because he could not control himself under those circumstances. (Anderson Decl. ¶ 6.) Vegtel ceased talking about these subjects when Anderson asked him to stop. (Vegtel's SOUF ¶ 10; Anderton Decl., Ex. A at 174:5-176:4.)

Vegtel's pants fell down when he stood up because he rode in the truck with his pants unzipped and unbuttoned. (Vegtel's SOUF ¶ 13.) When Anderson suggested that Vegtel button his pants, Vegtel looked down and said he was "too large."[9] (Id. ¶ 14; Anderton Decl., Ex. A at 162:16-163:6.) Vegtel never zipped or pulled up his pants when driving in the truck. (Anderton Decl., Ex. A at 162:16-163:6.)

---

[7] This fact is undisputed for purposes of Defendants' motions. See supra n. 2.

[8] These facts are undisputed for purposes of Defendants' motions. See supra n. 2.

[9] The parties dispute whether this statement conveyed a sexual innuendo or whether "Vegtel was making a direct reference to his penis." (Anderson's SGI-Vegtel ¶ 14.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Anderson and Vegtel's next (and last) trip lasted from December 28, 2012 through January 6, 2013. (Anderson Decl. ¶ 7.) On December 31, 2012, their truck broke down in Pennsylvania. (Id.) Anderson and Vegtel had to stay at a hotel while they waited for repairs. (Id.; Vegtel's SOUF ¶ 20.) Anderson was concerned about sharing a room with Vegtel due to his prior conduct. (Anderson Decl. ¶ 8.) On December 31, she sent Stearns a message through CRST's Qualcomm communications system inquiring about a separate room. (Id., Ex. B.) The message stated:

> WE FOUND A HOTEL . . . . ANOTHER CRST DRIVER IS HERE GOING TO SUPER 8, WE CAN CATCH A CAB WITH HIM. CAN WE HAVE SEPARATE ROOMS OR DO WE HAVE TO SHARE A ROOM. THANK YOU ROBIN.

(Id.) Stearns replied that he was "only able to reimburse 1 room." (Id.) Anderson asked Vegtel if he would share a room with the other male driver staying at the same hotel. (Id. ¶ 10.) She was informed that this was not possible. (Id.; Anderton Decl., Ex. A at 190:1-25.)

Although she did not want to, Anderson shared a room with Vegtel because she preferred not to stay in the truck, which had no bathroom or food. (Anderson Decl. ¶ 9.) Anderson told Vegtel that she would share a room only if he kept his clothes on and stayed on his side of the room. (Id.) Vegtel asked if he could take off his shirt; Anderson replied that he could not. (Id.)

No harassment occurred on the night of December 31, 2012. (Vegtel's SOUF ¶ 20.) The next night, however, Anderson woke up in the middle of the night to find Vegtel naked and "coming up off his bed toward" her.[10] (Anderson Decl. ¶ 10; Vegtel's SOUF ¶ 21.) When Vegtel saw that Anderson was awake, he stopped rising and rolled back to his bed and sat on the far side of the bed with his head in his hands. (Anderson Decl. ¶ 11.) After a few minutes, Vegtel stood up, "completely naked," picked up his pants from the floor and put them on. (Id. ¶¶ 10-11.) Anderson then covered her head in her blanket and did not say a word all night. (Id. ¶ 11) The next morning, Anderson told Vegtel that she did not appreciate what he had done the night before, and Vegtel

---

[10] The parties dispute exactly what transpired this night, including whether Vegtel was naked. (See, e.g., Anderson's SGI-CRST ¶ 72-73.) Where a genuine dispute of fact exists, the Court has recounted the facts in the light most favorable to Anderson. See Nolan v. Heald College, 551 F.3d 1148, 1154 (9th Cir. 2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

explained that he had an "accident" on his bed. (Id.)

Nothing inappropriate occurred during the night of January 2, 2013, which was the final night that Anderson and Vegtel shared a hotel room. (CRST's SOUF ¶¶ 77-79; Vegtel's SOUF ¶¶ 22-23.)[11] On January 3, 2013, Anderson sent a Qualcomm message to Stearns informing him that she and Vegtel were back on the truck and needed a load. (CRST's SOUF ¶ 82.) On January 4, 2013, Anderson wrote a series of Qualcomm messages to Stearns communicating that she and Vegtel needed to return to the Fontana yard after their current delivery and that she was having issues with Vegtel. (Anderson Decl. ¶ 11, Ex. C.) Beginning at 9:38 a.m. CST, Anderson wrote:

> JOE AFTER THIS DELIVERY WE NEED TO GO TO THE FONTANA YARD. ROBIN. . . .
>
> WE HAVE SOME ISSUES TO DEAL WITH. ROBIN. . . .
>
> SOME VERY SERIOUS ISSUES WITH MYSELF AND CO-DRIVER. IF YOU WANT THEM ON THE QUALCOMM I WILL PUT THEM HERE. ROBIN.

(Id., Exs. C & D) In response to Stearns' request for additional details, Anderson replied:

> SEVERAL ISSUES. I WOKE UP IN THE HOTEL TO HIM SITTING NAKED ON THE SIDE OF THE BED. ROBIN.

(Id., Ex. C; CRST's SOUF ¶ 83.) Stearns responded by giving Anderson the contact information for CRST's HR Department and found a return load for Anderson and Vegtel to take back to Fontana, CA. (CRST's SOUF ¶¶ 85-86.)[12]

Anderson and Vegtel returned to Fontana on January 6, 2013. (Id. ¶ 88) That morning, Anderson immediately removed her items from the truck and logged out of CRST's system. (Id. ¶ 89.) Anderson did not ask to be separated from Vegtel prior to returning to California on January 6, 2013. (CRST's SOUF ¶ 87; Anderson Decl. ¶¶ 12-

---

[11] These facts are undisputed for purposes of Defendants' motions. See supra n. 2.

[12] These facts are undisputed for purposes of Defendants' motions. See supra n. 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

13, Ex. D.)[13] On January 7, 2013, Anderson submitted a written statement regarding Vegtel's conduct during the preceding three weeks.[14] (CRST's SOUF ¶ 90; Anderson Decl. ¶ 5, Ex. A.) Anderson's statement was given to Alvin Hoggard, who immediately emailed it to Sarah Kircher in CRST's HR Department. (CRST's SOUF ¶ 91.)

CRST opened an investigation in response to Anderson's written complaint.[15] (Id. ¶ 93.) Consistent with CRST's company policy, CRST took the precautionary measure of noting in its internal system that Vegtel could no longer be paired with a female co-driver. (Id. ¶ 94.)[16] Vegtel has not driven with a female co-driver since Anderson filed her January 7, 2013 complaint. (Id.)[17]

---

[13] This fact is undisputed for purposes of Defendants' motions. See supra n. 2.

[14] Anderson claims that "[s]hortly after she registered her complaint, [she] was approached by a man she did not know or recognize who told her 'You now have become their liability. You're no longer an asset to them. You need to move on. It doesn't matter what he did. It matters what you just did.'" (Pl.'s Opp. to CRST's Mot. at 5.) The Court disregards this claim, which is unsupported by any citation to evidence in the record.

[15] Anderson disputes this fact, asserting that CRST did not conduct any interviews as part of the investigation and CRST's "Investigation Form" is blank. (Anderson's SGI-CRST ¶ 93.) The Court accepts as undisputed the fact that CRST opened an investigation, which Anderson does not directly contest. The Court assumes, for purposes of CRST's motion, that CRST did not interview anyone with respect to Anderson's complaint.

[16] This fact is undisputed for purposes of Defendants' motions. See supra n.2.

[17] This fact is undisputed for purposes of Defendants' motions. See supra n.2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where the moving party has the burden of proof at trial, it must establish "beyond controversy every essential element" of its claim. So. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003) (internal quotation marks omitted). "This burden is not a light one." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). But the moving party need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial. Id. at 323-24; Fed. R. Civ. P. 56(c)(1). A non-moving party who bears the burden of proof at trial as to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. See Celotex Corp., 477 U.S. at 322. In ruling on a summary judgment motion, the Court must construe the evidence in the light most favorable to the non-moving party. Nolan v. Heald College, 551 F.3d 1148, 1154 (9th Cir. 2009).

## III. DISCUSSION

### A. Vegtel's Motion for Summary Judgment

Anderson alleges that Vegtel sexually harassed her in violation of California's Fair Housing and Employment Act (FEHA), Cal. Gov. Code § 12940, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Vegtel argues that he is entitled to summary judgment because (1) Title VII does not apply to individuals; (2) FEHA does not extend to conduct that occurs outside of California; and (3) even if FEHA applies, the undisputed facts establish that he did not violate the act.

#### Title VII

Title VII does not provide for liability against a defendant sued in his individual capacity. See Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587 (9th Cir. 1993). Therefore, Vegtel, who is sued only in his individual capacity, is entitled to summary judgment as to Anderson's Title VII claim against him.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

**FEHA**

Vegtel contends that FEHA is inapplicable because the alleged sexual harassment occurred outside of California. Anderson concedes that FEHA does not "apply to nonresidents where . . . the tortious conduct took place out of this state's territorial boundaries." Campbell v. Arco Marine, Inc., 42 Cal. App. 4th 1850, 1852 (1996). The parties dispute whether this rule extends to cases where, as here, the plaintiff is a California resident.

The Court concludes that FEHA is inapplicable when the challenged conduct occurs outside of California. This conclusion is consistent with Campbell and other California cases that have analyzed a statute's extraterritorial effect. As early as 1916, the California Supreme Court explained that "[o]rdinarily the statutes of a state have no force beyond its boundaries." N. Alaska Salmon Co. v. Pillsbury, 174 Cal. 1, 4 (1916). "Although a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions [o]ccurring beyond its boundaries, the presumption is that it did not intend to give its statutes any extraterritorial effect." Id. The Supreme Court has articulated a similar presumption against extraterritoriality when interpreting Title VII. See E.E.O.C. v. Arabian Am. Oil Co., 499 U.S. 244, 248 (1991) ("We assume that Congress legislates against the backdrop of the presumption against extraterritoriality. Therefore, unless there is the affirmative intention of the Congress clearly expressed, we must presume it is primarily concerned with domestic conditions." (internal quotation marks and citation omitted).)

In N. Alaska Salmon Co., which involved a worker's compensation claim by a California resident against a California corporation, the California Supreme Court explained that "[t]he intention to make the act operative with respect to occurrences outside the state will not be declared to exist unless such intention is clearly expressed or reasonably to be inferred 'from the language of the act or from its purpose, subject-matter, or history.'" 174 Cal. at 4. The court concluded that neither the subject law's language – which said nothing about the place of injury – nor its legislative history suggested that the law was "intended to apply to injuries occurring in foreign jurisdictions." (Id.) A similar conclusion is warranted here. Anderson has not offered any evidence – e.g., FEHA's text or legislative history – supporting the conclusion that the California legislature intended for FEHA to regulate conduct occurring outside of California.

Anderson appears to argue that even if the challenged conduct occurred outside of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

California, her claims do not present an extraterritorial application of FEHA because "FEHA was enacted to protect California residents against [harassment] in connection with their employment in California." (Pl.'s Opp. at 10.) This proposition misapprehends the concept of extraterritoriality, which concerns legislation that regulates conduct that occurs in a foreign jurisdiction -- regardless of the plaintiff's residency. See Diamond Multimedia Sys., Inc. v. Super. Ct., 19 Cal. 4th 1036, 1060 (1999) ("The presumption against extraterritoriality is one against an intent to encompass *conduct* occurring in a foreign jurisdiction in the prohibitions and remedies of a domestic statute.").[18]

It is undisputed that all of Vegtel's alleged misconduct occurred outside of California.[19] Given the Court's conclusion that FEHA does not apply extraterritorially, Vegtel is entitled to summary judgment on Anderson's FEHA claim against him.

### B.    CRST's Motion for Summary Judgment

**FEHA**

Like Vegtel, CRST argues that FEHA does not apply to it because all of the purported sexual harassment occurred outside of California. The Court agrees.

CRST is also entitled to summary judgment on Anderson's "failure to prevent" cause of action, which is premised on a violation of FEHA.[20] This cause of action likely

---

[18] Anderson's "conflict of laws" analysis is also misplaced. As to FEHA's applicability, neither Defendant contends that the law is inapplicable because another state's laws govern. Rather, Defendants argue that FEHA does not apply because the statute lacks extraterritorial effect and all of the challenged conduct occurred outside of California.

[19] Anderson repeatedly disputes facts concerning where the purported harassment occurred "to the extent Defendant is asserting that FEHA does not apply to her claims in this action." (See, e.g., Anderson's SGI-Vegtel ¶¶ 16, 24; Anderson's SGI-CRST ¶¶ 3-4.) As noted above, challenging an otherwise undisputed fact by arguing that the fact is irrelevant does not create a genuine dispute of fact and violates this Court's Initial Standing Order. See supra n.2.

[20] Anderson's Complaint suggests that her "failure to prevent" cause of action also arises under Title VII and California Bus. & Profs. Code § 17200. (See Compl. ¶ 49.) During the parties' March 30, 2015 hearing, Anderson's counsel clarified that this cause of action alleges a violation of FEHA only.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

requires an extraterritorial application of FEHA. Even were FEHA applicable, CRST's cited authority establishes that this cause of action fails given the absence of a valid sexual harassment, discrimination, or retaliation claim, as explained in greater detail below.

### Title VII

Anderson brings two causes of action under Title VII: sexual harassment and retaliation.[21]

(1) Sexual Harassment

"Sexual harassment is a species of gender discrimination: Harassing an employee on account of sex is, conceptually, the same as refusing to hire on account of sex, or paying less for the same work, or imposing more onerous duties for the same pay." Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000). For purposes of Title VII, the critical issue "is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (internal quotation marks and citation omitted).

Anderson argues that Vegtel's conduct created an unlawful hostile work environment, which is defined as "a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed." Brooks, 229 F.3d at 923. To prevail on this claim, Anderson must establish that the challenged conduct was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); see also Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003).

"The working environment must both subjectively and objectively be perceived as abusive." Brooks, 229 F.3d at 923. Courts consider "all the circumstances" when

---

[21] Anderson's second cause of action for discrimination and fourth cause of action for failure to prevent arise under FEHA alone. (See Compl. ¶¶ 38-42; Pl.'s Opp. to CRST's Mot. at 17; supra n.20.) Even if Anderson's discrimination cause of action did not require an extraterritorial application of FEHA, it would fail for the same reasons that her retaliation claim fails; Anderson has offered no evidence to rebut CRST's showing that it had a legitimate and nondiscriminatory reason for taking adverse employment action against Anderson.

**MEMORANDUM**

analyzing whether the subjective and objective standards are met. Vasquez, 349 F.3d at 642. This includes examining "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (internal quotation marks omitted). The "required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." Ellison v. Brady, 924 F.2d 872, 878 (9th Cir. 1991).

"Because only the employer can change the terms and conditions of employment, an isolated incident of harassment by a co-worker will rarely (if ever) give rise to a reasonable fear that sexual harassment has become a permanent feature of the employment relationship." Brooks, 229 F.3d at 924. This stands in contrast to cases involving a series of events that the employer knows about but fails to remedy, see id. at 924 n.4 ("In such circumstances, the non-action by the employer can fairly be characterized as acquiescence, i.e., having changed the terms and conditions of employment to include putting up with harassment from other employees."), or cases involving a sustained campaign of harassing and an inadequate employer response, see id. at 927 (distinguishing Brooks from Ellison, 924 F.2d at 873-75).

Anderson contends that a triable issue of facts exists concerning whether Vegtel's alleged conduct was sufficiently severe and pervasive to create a hostile work environment. In at least one instance, the Ninth Circuit has confronted conduct more severe than that alleged here and determined that it was insufficient to support a viable hostile environment claim, and affirmed the grant of summary judgment. See Brooks, 229 F.3d at 921-27 (male co-worker "placed his hand on [female plaintiff's] stomach and commented on its softness and sexiness"; "later position himself behind [plaintiff's] chair, boxing her in . . . [and] forced his hand underneath her sweater and bra to fondle her bare breast"; stated "you don't have to worry about cheating [on your husband], I'll do everything"; and spent 120 days in jail after pleading no contest to misdemeanor sexual assault).

The cases cited by Anderson do not compel a different conclusion here. In Ellison, for instance, a male co-worker sent the female plaintiff a series of "love letters" that included a "typed, single-spaced, three-page letter" that mentioned "sex," and "enjoy[ing]" and "[e]xperiencing" the plaintiff. 924 F.2d at 874. The co-worker continued to send "love letters" even after being told to leave the plaintiff alone, and after initially transferring the co-worker to a different office, the employer permitted him to return even when his inappropriate conduct had not ceased. Id. at 874-75.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

Vegtel's conduct was not a sustained campaign of harassment. Although the conduct occurred across a three-week period, there appear to have been only two primary incidents. The first incident occurred when Vegtel made comments regarding women's breasts and his work in the porn industry. Even recognizing that these comments could contribute to a hostile working environment, Vegtel ceased talking about these topics when Anderson asked him to do so. The second, and more concerning event, occurred when Anderson awoke to find Vegtel naked in their shared hotel room. Given his prior inappropriate remarks, the isolated setting of a Pennsylvania hotel room, and Anderson's direct instructions that Vegtel sleep in his clothes, awaking to a naked Vegtel would have reasonably alarmed Anderson.

That said, unlike the male co-worker in Brooks, Vegtel never touched Anderson or verbally requested sexual favors from her. (Vegtel's SOUF ¶¶ 17-18.)[22] Even more importantly, Anderson's employment did not require her to continue co-driving with Vegtel. The undisputed facts show that CRST complied when Anderson requested a load back to Fontana, and that Stearns emailed her a list of potential female co-drivers. CRST further responded to Anderson's January 7 complaint by prohibiting Vegtel from co-driving with women. Even recognizing that Vegtel engaged in inappropriate conduct, the structure of Anderson's employment and CRST's response preclude a finding that Vegtel's conduct was sufficiently severe or pervasive to alter the conditions of Anderson's employment with CRST.

Even were Vegtel's conduct sufficient to alter the conditions of Anderson's employment, the undisputed facts establish that CRST is not liable. Under Title VII, an employer's liability for sexual harassment often depends on the status of the harasser. See Vance v. Ball State Univ., 133 S. Ct. 2434, 2439 (2013). "If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." Id. In such a context, "employers are liable for failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1119 (9th Cir. 2004) (internal quotation marks and citation omitted). "[A]n employer cannot be held liable for misconduct of which it is unaware." Swenson v. Potter, 271 F.3d 1184, 1192 (9th Cir. 2001). "The employer's liability, if any, runs only from the time it knew or should have known about the conduct

---

[22] Beyond implying that Vegtel's conduct of "presenting himself completely naked" constituted a request for sexual favors, Anderson does not dispute that Vegtel never touched her or requested sexual favors from her. (Anderson's SGI-Vegtel ¶¶ 17-18.)

**MEMORANDUM**

and failed to stop it." Id. (internal quotation marks omitted).

In contrast, if the harasser is a "supervisor," the employer is strictly liable and "may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." Id.

Anderson argues that Vegtel was her supervisor and that his conduct is therefore imputed to CRST for purposes of Title VII liability. Nothing in the record supports this characterization of Vegtel's employment status. A supervisor is defined as an employee with the power "to take tangible employment actions against the victim, i.e., to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Vance, 133 S. Ct. at 2443.

Anderson claims that Vegtel was her supervisor because he was the Lead Driver of their truck. Even assuming that Anderson has competent evidence to support the contention that Vegtel was a Lead Driver, there is no indication that a Lead Driver constitutes a supervisor under Title VII. Vegtel's authority, even according to Anderson, appears largely limited to decision making concerning the truck and their route; no facts suggest that Vegtel had authority to take employment actions against Anderson. No reasonable juror could conclude that Vegtel was Anderson's supervisor for purposes of Title VII liability. See Brooks, 229 F.3d at 925 n.6.

The undisputed facts confirm that CRST was unaware of Vegtel's purported misconduct until after the conduct had ceased. Anderson concedes that she informed CRST about Vegtel's conduct for the first time on January 4, 2013 via a Qualcomm message to Stearns. (Anderson's SGI-Vegtel ¶ 26; Anderson Decl. ¶ 11, Ex. C.) Anderson followed this message with a more detailed complaint on January 7, 2013. (Anderson Decl. ¶ 13, Ex. A.) Both communications came after Vegtel's last inappropriate act, which occurred the night of January 2, 2013. After receiving Anderson's complaint, CRST prohibited Vegtel from driving with a female co-driver, a remedial measure designed to prevent future sexual harassment. Given CRST's affirmative remedial action and the fact that no sexual harassment occurred after Anderson informed CRST about Vegtel's purported misconduct, no reasonable juror could conclude that CRST negligently permitted the challenged conduct to occur. This is not an instance in which an employer failed to take adequate "corrective action after

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

learning of an employee's sexually harassing conduct." Id. (citation omitted). CRST is entitled to summary judgment on Anderson's sexual harassment claim.

    (2)    Retaliation

"[E]mployees who are subject to adverse employment actions because they lodged complaints of sexual harassment can raise a retaliation claim under Title VII." Brooks, 229 F.3d at 923. Anderson asserts that she was denied work assignments and terminated because she complained to CRST about Vegtel's conduct.

This claim is analyzed under the McDonnell Douglas burden shifting framework. Anderson must initially establish a prima facie case of retaliation by showing that (1) she engaged in a protected activity; (2) CRST subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000). If Anderson establishes a prima facie case, the burden of production shifts to CRST to articulate a legitimate, nondiscriminatory reason for the challenged action. Id. If CRST does so, Anderson "bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive." Id. "[U]nder the McDonnell Douglas framework, the requisite degree of proof necessary to establish a prima facie case for Title VII on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002) (internal quotation marks, brackets, and ellipsis omitted).

CRST argues that Anderson has not suffered an adverse employment action because CRST removed her as a current employee only after Anderson did not return Stearns' phone calls and CRST had not heard from her for several weeks. CRST's cited authority does not support the proposition that removing Anderson from CRST's list of current employees did not constitute an adverse employment action. Rather, the cases demonstrate that terminating an employee, although an adverse employment action, can constitute legitimate, nondiscriminatory conduct when it occurs after the employee "abandoned" her employment. See Ferguson v. Walmart, No. CV 12-04434 RSWL (Ex), 2014 WL 24139, at *15 (C.D. Cal. Jan. 2, 2014); Burke v. Starbucks Coffee Co., No. 2:09-CV-01920-GEB-GHH, 2010 WL 5136166, at *5 (E.D. Cal. Dec. 10, 2010); Gums v. Oakland Unified Sch. Dist., No. C 01-02972 WHA, 2003 WL 716240, at *8 (N.D. Cal. Feb. 24, 2003).

A similar conclusion is warranted here. It is undisputed that after Anderson

**MEMORANDUM**

submitted her January 7 complaint, Stearns attempted to contact her and sent her an email that contained the contact information of potential female co-drivers. (CRST's SOUF ¶ 96.)[23] This fact is supported by Stearns' accompanying declaration, which includes a copy of the email that Stearns sent to Anderson. (Stearns Decl. ¶ 15, Ex. 2.) The email is dated January 7, 2013, one day after Anderson and Vegtel returned to California and the day that Anderson submitted her complaint to CRST. (Id.) Anderson does not dispute the foregoing, but – as with other facts – disputes whether CRST adequately investigated her complaint. (Id.) Even if CRST's investigation was limited in the ways Anderson contends, the undisputed facts establish that Stearns reached out to Anderson to pair her with a female driver after she returned from the trip with Vegtel. On January 23, Stearns emailed the following inquiry to Kircher in CRST's HR Department:

> Have you resolved the HR issue with Robin?
> Would like to get her back to work, but last I heard she was waiting till it was resolved.

(CRST's SOUF ¶ 98; Stearns Decl. ¶ 16, Ex. 3.)[24]

It is undisputed that, on March 5, 2013, Stearns informed his supervisor that Anderson should be removed as a current employee in CRST's system because Stearns had not heard from Anderson and had been unable to contact her for several weeks. (CRST's SOUF ¶ 100.) Stearns' act of reaching out to Anderson following her complaint, in conjunction with CRST removing Anderson from its system of current employees only after CRST had been unable to contact Anderson for several weeks, satisfies CRST's burden of producing evidence that it possessed a legitimate, nondiscriminatory reason for taking adverse employment action against Anderson.

Anderson argues that she did not abandon her job, but rather that after lodging her complaint, "CRST refused to assign her any more work, and denied her request to drive solo or be paired with another driver." (Pl.'s Opp. to CRST's Mot. at 18.) Anderson's declaration, the only evidence offered on this issue, does not support her claim. First, Anderson's declaration does not actually address any purported request to drive solo or be paired with another driver. (Anderson Decl. ¶ 14.) Second, the declaration states that CRST did not offer Anderson another trip, not that it refused to assign her more work –

---

[23] This fact is undisputed for purposes of Defendants' motions. See supra n.2.

[24] This fact is undisputed for purposes of Defendants' motions. See supra n.2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

the precise claim stated in her opposition. (Id.) The assertion that CRST did not offer Anderson another trip is consistent with CRST's claims that Stearns reached out to Anderson; Anderson did not respond to Stearns; and as a result, Stearns informed his supervisor to remove Anderson from CRST's current employee system. Anderson has not produced evidence sufficient to support a finding that CRST's explanation was pretextual.[25] CRST is entitled to summary judgment on Anderson's retaliation claim.

### IV. CONCLUSION

The Court GRANTS Defendants' motions for summary judgment.

IT IS SO ORDERED.

---

[25] Anderson has offered no evidence to support her claim that Vegtel was "given preferential treatment over [her] following her complaints against him, including that he was still given work assignments and permitted to drive solo, when Plaintiff was not." (Pl.'s Opp. to CRST's Mot. at 19.) The limited evidence in the record suggests that CRST limited Vegtel's privileges by prohibiting him from co-driving with women. (See CRST's SOUF ¶ 94.)